**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MTE HOLDINGS, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br>Case No.  19-12269 (CSS)<br><br>(Jointly Administered) |
| STEP ENERGY SERVICES HOLDINGS LTD,<br><br>Plaintiff,<br><br>v.<br><br>MDC ENERGY, LLC D/B/A<br>MDC TEXAS ENERGY, LLC,<br>MDC TEXAS OPERATOR, LLC<br>MDC REEVES ENERGY, LLC and<br>NATIXIS, NEW YORK BRANCH,<br><br>Defendants. | Adv. No. _____ |

**STEP ENERGY SERVICES HOLDINGS LTD'S COMPLAINT AND**
**REQUEST FOR DECLARATORY JUDGMENT TO DETERMINE**
**VALIDITY, PRIORITY, PERFECTION, AND EXTENT OF CERTAIN**
**MINERAL LIENS ON THE DEBTORS' PROPERTIES**

STEP Energy Services Holdings LTD., formerly Tucker Energy Services, Inc., ("STEP"),[2]

pursuant to Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 7001, and the *Order*

*Establishing  Procedures to Determine the Validity, Priority and Extent of Liens Asserted by*

---

[1]

 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463). The location of the Debtors' service address in these chapter 11 cases is: 6500 East 14 Mile Road, Warren Michigan 48092.

[2]  Tucker Energy Services, Inc. is a predecessor-in-interest to STEP.

*Statutory Lien Claimants* [Dkt. No. 1150] (the "Lien Procedures Order"), respectfully requests a declaratory judgment determining the validity, priority and extent of liens on the Debtors' property, and alleges as follows:

## I.
## PARTIES

1.      STEP is a Kansas corporation with its principal place of business in Texas.

2.      Defendant MDC Energy, LLC ("MDC Energy") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana. MDC Energy may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, or its counsel of record in these bankruptcy cases.

3.      Defendant MDC Texas Operator, LLC ("MDC Texas") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.  MDC Texas may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, or its counsel of record in these bankruptcy cases.

4.      Defendant MDC Reeves Energy, LLC ("MDC Reeves") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.  MDC Reeves may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, or its counsel of record in these bankruptcy cases.

5.      Natixis, New York Branch ("Natixis") is the administrative agent on behalf of certain lenders and other parties and as a lender (collectively, the "Lenders" and, together with Natixis, the "Prepetition Secured Parties") in connection with a $60 million credit facility under

that certain Credit Agreement dated as of September 17, 2018, (the "Credit Agreement") with Defendant MDC.

## II.
## JURISDICTION AND VENUE

6.      Defendants MDC Energy, MDC Texas Operator, and MDC Reeves (collectively, the "Debtor Defendants") are debtors in the above-captioned jointly administered chapter 11 cases styled *In re MTE Holdings LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del.) (the "Cases"), pending in the United States Bankruptcy Court for the District of Delaware (the "Court").

7.      This Court has jurisdiction over the Cases and this Complaint pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R. Bankr. P. 7001(2) and 7001(9).

8.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

9.      Venue of the Cases and this adversary proceeding in this district is proper under 28 U.S.C. §§ 1408 and 1409.

10.     Pursuant to Rule 7008(a) and rule 7008-1 of the Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), STEP consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## III.
## NATURE OF ACTION

11.     This is an action pursuant to Bankruptcy Rules 7001(2) and 7002(9) and the Declaratory Judgment Act (28 U.S.C. ¶ 2201).

12.     By this Complaint, STEP seeks a judgment of this Court declaring the validity, perfection, and extent of certain statutory mineral liens held by STEP against certain property of the Debtor Defendants' and determining the priority of such liens against the prepetition and postpetition liens, security interests and claims of the Prepetition Secured Parties.  Specifically, STEP seeks an Order declaring (i) STEP holds valid, fully-perfected, and enforceable statutory mineral liens on the property of the Debtor Defendants' described below; and (ii) such valid, fully-perfected, and enforceable statutory mineral liens are senior in priority to the prepetition and postpetition liens and claims of the Prepetition Secured Parties.

## IV.

## <u>BACKGROUND</u>

### A.     Procedural History

13.     On November 8, 2019 (the "<u>Petition Date</u>"), the Debtor Defendants initiated their Cases by filing their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

14.     MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing oil-and-gas wells in connection with those mineral interests. *See* Schedules of Assets and Liabilities for MDC Reeves Energy LLC [Case No. 19-12388, Dkt. No. 6].

15.     On the Petition Date, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral; (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* [Dkt. No.. 49] (the "<u>Cash Collateral Motion</u>") seeking, *inter alia*, authorization to use

4

cash collateral and provide adequate protection and other forms of relief to certain prepetition secured parties. On November 19, 2019, the Court entered the first interim order [Dkt. No. 112] (the "First Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for December 13, 2019. On December 17, 2019, the Court entered the second interim order [Dkt. No. 297] (the "Second Interim Order") approving the Motion on an interim basis and setting a further hearing on the Motion for January 15, 2020, which hearing was subsequently adjourned to January 17, 2020. On January 17, 2020, the Court entered the third interim order [Dkt. No. 506] (the "Third Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for February 4, 2020. On February 4, 2020, the Court entered the fourth interim order [Dkt. No. 554] (the "Fourth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Motion for February 24, 2020. On February 27, 2020, the Court entered the fifth interim order [Dkt. No. 674] (the "Fifth Interim Order"). On April 2, 2020 a sixth interim order approving the Cash Collateral Motion [Dkt. No. 874] (the "Sixth Interim Order") was entered by the court. A stipulation authorizing an extension of the Sixth Interim Cash Collateral Order was filed with the Court on May 5, 2020 [Dkt. No. 1047]. The court entered a final order approving the Cash Collateral Motion on May 15, 2020 [DKT. NO. 1092] (the "Final Order," and together with the First Interim Order, Second Interim Order, Third Interim Order, Fourth Interim Order, Fifth Interim Order, and Sixth Interim Order, the "Cash Collateral Order").

16.    On June 2, 2020, the Bankruptcy Court entered the Lien Procedures Order providing a mechanism for statutory lien claimants to, *inter alia*, assert priority liens over some or all of the liens of the Prepetition Secured Parties. STEP files this Complaint pursuant to the terms of the Lien Procedures Order.

522018.000022 23698715.3

### B.    The Cash Collateral Order

17.    On September 17, 2018, the Prepetition Secured Parties made certain loans and extensions of credit to the Debtor Defendants under the Credit Agreement. In connection with the Cash Collateral Motion, the Prepetition Secured Parties have asserted that, under the Credit Agreement and certain other documentation executed therewith (collectively, the "Credit Documents"), the Debtor Defendants and certain affiliated guarantors granted "senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on . . . any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible, including Cash, securities, accounts and contract rights . . . ." Cash Collateral Order ¶ (D)(i). This assertion of a first priority security interest includes oil-and-gas leasehold interests, working interests, and associated property rights.

18.    Pursuant to the Cash Collateral Order, the Debtors have admitted and stipulated to the Prepetition Secured Parties' claim and security interests. *See* Cash Collateral Order ¶ (C), (D), (E), (F).

19.    Furthermore, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures. *See* Cash Collateral Order ¶¶ 4(a) and 4(b). The postpetition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined in the Cash Collateral Order) and (ii) provided the same relative priority with postpetition replacement liens granted to "Statutory Lienholders" (as defined in the Cash Collateral Order) as the underlying prepetition liens of the parties as of the Petition Date.

522018.000022 23698715.3

C.      **Events Affecting Lien Priority**

20.     On September 23, 2014, STEP and MDC Energy entered into that certain Master Services and Supply Contract dated September 23, 2014 by and between MDC Energy, LLC and Tucker Energy Services, Inc. (the "MSA") to provide fracturing and wireline services on certain mineral properties operated by MDC.[3]  A true and correct copy of the MSA is attached as **Exhibit A**.

21.     On September 25, 2018, the *Deed of Trust, Assignment, Security Agreement, Fixture Filing and Assignment of Production* from MDC Reeves to Carlos Quinteros, as Trustee for the benefit of Natixis, as Administrative Agent (the "Original Deed of Trust"), was recorded in Reeves County, Texas, granting Natixis a security interest in certain properties of the Debtor Defendants.  The Original Deed of Trust made reference to certain oil-and-gas leases, which, upon information and belief, relate to the Wells (as defined below) in which STEP has a valid, perfected security interest.  The Original Deed of Trust leases relevant to this Complaint are set forth on **Exhibit B** (the "Original Leases").  Accordingly, the security interests of the Prepetition Secured Parties were not perfected as to the Original Leases until at least September 25, 2018.

22.     Upon information and belief, MDC Reeves received an assignment of certain other leases in December of 2018.

23.     On or about March 1, 2019, the Debtor Defendants requested STEP to provide fracturing and wireline services on the Toyah B #2H (API No. 42-389-36842) (the "Toyah B #2H Well") and Toyah B 22-21 #2H (API No. 42-389-37957) (the "Toyah B 22-21 #2H Well," and together with the Toyah B #2H Well, the "Wells"), located in Reeves County, Texas, pursuant to the terms of the MSA.

---

[3] Upon information and belief, MDC Energy was acting on behalf of (including as an agent for) and for the benefit of themselves, MDC Reeves and MDC Operator.

7

24.     From March 5, 2019 to March 12, 2019, STEP performed the services requested on the Toyah B #2H Well and invoiced the Debtor Defendants for such services in the total amount of $1,367,510.10, as detailed on Invoice Nos. 002475 and 002505 (collectively, the "Toyah B #2HM Well Invoices").  True and correct copies of the Toyah B #2H Well Invoices are attached as **Exhibit C**.

25.     On April 2, 2019, STEP issued a credit on Invoice No. 002505 in the amount of $27,781.22 ("Toyah B #2H Well Credit"), bringing the total balance on the Toyah B #2H Well Invoices to $1,339,728.88.  A true and correct copy of the Toyah B #2H Well Credit is attached hereto as **Exhibit D**.  As of the Petition Date, the Debtor Defendants had failed to make payment on the outstanding balance of $1,339,728.88 for the fracturing and wireline services provided on the Toyah B #2H Well.

26.     From March 15, 2019 to March 28, 2019, STEP performed the services requested on the Toyah B 22-21 #2H Well and invoiced the Debtor Defendants for such services in the total amount of $2,444,416.20, as detailed on Invoice Nos. 002523 and 002526 (collectively, the "Toyah B 22-21 #2H Well Invoices," and together with the Toyah B #2HM Well Invoices, as modified by the Toyah B #2HM Well Credit, the "Invoices").  True and correct copies of the Toyah B 22-21 #2H Well Invoices are attached as **Exhibit E**.

27.     As of the Petition Date, the Debtor Defendants had failed to tender the outstanding balance of $2,444,416.20 for the fracturing and wireline services provided on the Toyah B 22-21 #2HM Well, bringing the total amount outstanding for the work performed by STEP for the Debtor Defendants related to the Invoices to $3,784,145.08 (the "Outstanding Balance").

28.     On April 18, 2019, the *Supplement and First Amendment to Deed of Trust, Assignment, Security Agreement, Fixture Filing, Financing Statement, and Assignment of*

8

*Production* (the "Supplemental Deed of Trust")[4] was filed in Reeves County.  The Supplemental

Deed of Trust made reference to additional leases which, upon information and belief relate to the

Wells, and on which STEP has a valid, and perfected security interest.  These leases were not

referenced in the Original Deed of Trust.  A list of these leases is attached as **Exhibit F** (the

"Supplemental Leases").

29.    On September 9, 2019, STEP recorded a Mineral Contractor's Affidavit for Lien

Against Mineral Property with the County Clerk of Reeves County, Texas relating to its work on

both the Toyah B 22-21 #2H and Toyah B #2HM Wells (collectively, the "Liens"), which are

owned and/or operated by the Debtor Defendants.  True and correct copies of the receipts issued

by the County Clerk of Reeves County, Texas for the Liens are attached hereto as **Exhibit G**.

30.    In light of the Cash Collateral Order and the broad assertions of first-position

priority by the Prepetition Secured Parties as to their prepetition and postpetition liens, STEP

disputes the Prepetition Secured Parties' prepetition and postpetition security interests insofar as

such security interests are asserted to be superior to certain of the valid, fully-perfected, and

enforceable statutory mineral liens of STEP as further described herein.[5]

# V.
## ARGUMENT AND AUTHORITIES

**A.    STEP Has Priority Over the Prepetition Secured Parties with Respect to the Supplemental Leases.**

31.    Texas Property Code section 56.002 provides that "[a] mineral contractor . . . has a

lien to secure payment for labor or services related to the mineral activities."  TX PROP. CODE §

---

[4] Due to the voluminous nature of the Original Deed of Trust and the Supplemental Deed of Trust (together, the "Deeds of Trust"), the Deeds of Trust are not attached as an Exhibit to this Complaint.  However, the Deeds of Trust were filed at Dkt. No. 1174 in these cases.

[5] Paragraphs 4(a) and 4(b) of the Cash Collateral Order do not provide priming liens to the Prepetition Secured Parties. Instead, the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." Cash Collateral Order ¶¶ 4(a) and 4(b).

56.002.  Such lien attaches to:

> (1) the material, machinery, and supplies furnished or hauled by the lien claimant;
> (2) the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the labor was performed or material, machinery, or supplies were furnished or hauled, and the buildings and appurtenances on this property;
> (3) other material, machinery, and supplies used for mineral activities and owned by the owner of the property listed in Subdivision (2); and
> (4) other wells and pipelines used in operations related to oil, gas, and minerals and located on property listed in Subdivision (2).

TX PROP. CODE § 56.003.[6]

32.     Once a mineral lien is properly perfected, the inception date of the lien relates back to the commencement of the furnishing of labor and/or material on the properties.  *See* TEX. PROP. CODE §§ 56.004-56.005; *see also Youngstown Sheet & Tube Co. v. Lucey Prods. Co.*, 403 F.2d 135, 143 (5th Cir. 1968); *In re Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ("[T]he Court finds that for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automically [sic] relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract.").

33.     Texas law provides that:

> the inception date of a mineral contractor lien relates back to the date work was first performed or materials first supplied, but the lien does not affect an encumbrance that attached to land or a leasehold before the lien's inception. Thus, under the 'first in time' rules under Texas . . . law, [a lender] will only take first priority over a valid [mineral lienholder] on a particular oil and gas lease where [such lender] perfected its lien prior to the date that the [mineral lienholder] first provided labor or materials attributable to that lease.

---

[6] Under applicable Texas law, where multiple leases are operated as a pooled unit or a proration unit, mineral liens extend to and encumber the totality of the acreage of each lease included (in whole or in part) in the applicable pooled unit. *See* Tex. Prop. Code § 56.003; *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 406-7 (Tex. Civ. App.—Eastland 1975, no writ); Upon information and belief, certain of the leases referenced herein were operated as a pooled/proration unit and therefore STEP's liens extend to and encumber the entire pooled/proration unit and relate back to the commencement of the furnishing of labor and/or materials for the pooled/proration unit.

10

*In re Cornerstone E & P Co., L.P.*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010) (internal citations omitted).

34.     While the Original Deed of Trust, which referenced the Original Leases, was filed prior to the date STEP can claim priority, STEP began work on the Debtor Defendants' property prior to the recording of the Supplemental Deed of Trust, and thus prior to any perfection of a lien in favor of the Prepetition Secured Parties on the Supplemental Leases.  Accordingly, STEP's lien is superior to that of Natixis with respect to the Supplemental Leases.

35.     Further, mortgages purporting to cover all land or interests a party may acquire in the future by virtue of an after-acquired property clause do not impart constructive notice of a lien, and thus are not perfected, because they are not in the chain of title. TEX. PROP. CODE, Title 2 App., Tex. Title Examination Standards § 4.50, State Bar of Tex. Joint Editorial Bd. (citing *First Nat. Bank v. Sw. Lumber Co. of New Jersey*, 75 F.2d 814, 816 (5th Cir. 1935)). In order for such an after-acquired property provision to impart notice, it must describe the exact property to be acquired in the future. *In re Cornerstone*, 436 B.R. at 862 (citing *Simon v. State Mut. Life Assur. Co.*, 126 S.W.2d 682, 685 (Tex. Civ. App.—Dallas 1939, writ ref'd).

36.     None of the Supplemental Leases are referenced in any respect by the Original Deed of Trust.  While the Original Deed of Trust purports to convey a lien on

> (b) all rights, options, titles, interests and estates now owned or hereafter acquired by the Mortgagor in and to oil and gas leases, oil, gas, and mineral leases, or other liquid or gaseous hydrocarbon leases, fee interests, surface interests, mineral fee interests, overriding royalty and royalty interests, net profit interests and production payment interests, including any reserved or residual interests of whatever nature, in each case which are described on Exhibit A [to the Original Deed of Trust], and (b) all other interests of the Mortgagor now owned or hereafter acquired in and to the lands that are subject to any of the leases and other interests described in Exhibit A [to the Deed of Trust], regardless of whether such other interests are incorrectly described in or omitted, in whole or in part Exhibit A [to the Original Deed of Trust]

Original Deed of Trust § 1.7, such a description is insufficient to describe the Supplemental Leases

such that the Prepetition Secured Parties' priority in the Supplemental Leases would relate back to the date that the Original Deed of Trust was recorded.  *See Simon v. State Mut. Life Assur. Co.*, 126 S.W.2d 682, 685 (Tex. Civ. App.—Dallas 1939, writ ref'd) (finding that for an after-acquired property clause to be effective, "it must be shown that at the date the mortgage was executed the parties thereto 'anticipated the acquisition by the grantor of the very property upon which the lien is sought to be fixed and foreclosed, and intended that it should be subject thereto"").  Further, to the extent that there are leases not properly identified by either the Original Deed of Trust or the Supplemental Deed of Trust that are unitized with leases in which STEP claims a security interest, these leases would also not relate back to the time that the Original Deed of Trust was recorded. *Id*.

> **B.    The Original Deed of Trust Violates the Statute of Frauds to the Extent it Purports to Convey a Security Interest in the Supplemental Leases.**

37.    Contracts for the transfer or assignment of real property interests such as oil-and-gas interests are subject to the Statute of Frauds. *See Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006).   To satisfy the Statute of Frauds, a legal description must provide within the document, or by reference to some other writing in existence at the time of the document, the means or information by which the land being conveyed can be identified, and located on the ground, with reasonable certainty. *Williams v. Ellison*, 493 S.W.2d 734, 736 (Tex. 1973). Essentially "[i]f enough appears in the description so that a party familiar with the locality can identify the premises with reasonable certainty, it will be sufficient." *Gates v. Asher*, 280 S.W.2d 247, 248–49 (Tex. 1955).  Typically, leases are identified by describing the names of the Lessor and the Lessee, the date of execution and/or recording, file numbers and/or volume and page numbers, acreage amounts and/or section or survey information.  *See Id.* at 416-17.

38.    The Original Deed of Trust does not contain an adequate description—or any

description—of the Supplemental Leases such that the Statute of Frauds is satisfied with respect to the Supplemental Leases. Further, to the extent that there are leases not identified by either the Original Deed of Trust or the Supplemental Deed of Trust that are unitized with leases in which STEP claims a security interest, such leases also fall short of satisfying the Statute of Fraud. *Id*.

## VI.
## CAUSES OF ACTION

**A. Count 1: Declaratory Judgment Under 28 U.S.C. §§ 2201 and 2202, and Lien Procedures Order Relating to Extent, Validity, and Priority STEP's Liens.**

39.     STEP incorporates all prior paragraphs into this section.

40.     In a case of actual controversy within its jurisdiction, except with respect to inapplicable exceptions, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201(a). Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a). Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. 28 U.S.C. § 2202. STEP provided the labor and services to the Debtor Defendants as described herein and in the Exhibits attached hereto. STEP properly and timely perfected its liens pursuant to Texas Property Code section 56.001 *et. seq*. On information and belief, the value of the property to which STEP's liens attach exceeds the amount of the outstanding indebtedness owing to STEP.

41.     STEP's liens fully secure the Outstanding Balance owed by the Debtor Defendants to STEP, plus additional attorneys' fees and other costs as may be allowed by applicable law. STEP seeks a declaratory judgment establishing the extent, validity, perfection and priority of

13

STEP's liens, as described herein, pursuant to Bankruptcy Rules 7001(2) and 7001(9).

42.     STEP further seeks a judgment recognizing and making enforceable its Liens against the property described in the Liens and this Complaint and as allowed under Chapter 56 of the Texas Property Code.

43.     STEP also seeks a declaratory judgment that its liens are valid, properly perfected, first priority mineral liens in accordance with applicable law against the Supplemental Leases, and any lease unitized with the Supplemental Leases that is not properly described by the Deeds of Trust, to secure payment of the amounts owed to STEP by the Debtor Defendants, and further recognizing and making enforceable STEP's Liens under all applicable law and senior to the Deeds of Trust, and which are superior to the prepetition and postpetition liens, security interests and claims of the Prepetition Secured Parties as to the property described above.

### B.  Count 2 - Recovery of Attorneys' Fees and Costs.

44.     STEP incorporates all prior paragraphs into this section.

45.     Pursuant to Section 506(b) of the Bankruptcy Code, 28 U.S.C. § 2202, and Chapter 53 of the Texas Property Code, Texas Civil Practices and Remedies Code section 38.001, and the terms of the MSA, STEP seeks recovery of all reasonable  attorneys' fees, interest and costs incurred in enforcing its statutory privilege, liens, claims and underlying obligations related thereto in this proceeding.

### VI.
### RESERVATION OF RIGHTS

46.     STEP reserves its right to amend this Complaint based on new information that may be received during discovery or as otherwise allowed by law or this Court.

522018.000022 23698715.3

## VII.
## PRAYER

Wherefore, STEP prays for the following:

    a.    a judgment providing all declaratory relief described herein;

    b.    a judgment that STEP has valid, properly perfected, first priority mineral liens in accordance with applicable law against the property described above;

    c.    a judgment that STEP's liens are superior in priority to the Deeds of Trust and the prepetition and post-petition liens, security interests and claims of the Prepetition Secured Parties with respect to the Supplemental Leases and any lease unitized with a lease in which STEP has a security interest, but not referenced in the Original Deed of Trust;

    d.    an award of applicable interest, reasonable attorneys' fees, and costs; and

    e.    that STEP be granted all other relief, general or special, at law or in equity, to which the STEP shows itself justly entitled.

*[Signature Page to Follow]*

522018.000022 23698715.3

DATED:   July 2, 2020

         Respectfully submitted,

**THE LAW OFFICES OF JOYCE, LLC**

  */s/ Michael Joyce*
Michael J. Joyce (No. 4563)
1225 King Street Suite 800
Wilmington, DE 19801
Telephone: 302.388.1944
mjoyce@mjlawoffices.com

-and-

**THOMPSON & KNIGHT LLP**

Tye C. Hancock
Texas State Bar No. 24032271
Anthony F. Pirraglia
Texas State Bar No. 24103017
811 Main Street, Suite 2500,
Houston, Texas 77002
Telephone: 713.654.8111
Fax: 713.654.1871
Tye.Hancock@tklaw.com
Anthony.Pirraglia@tklaw.com

-and-

Christopher A. Bailey
Texas State Bar No. 24104598
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214.969.1700
Fax: 214.999.9133
Christopher.Bailey@tklaw.com

**ATTORNEYS FOR STEP ENERGY
SERVICES HOLDINGS LTD.**